**McGuireWoods LLP**
Sabrina A. Beldner (SBN 221918)
Email: sbeldner@mcguirewoods.com
Timothy M. Rusche (SBN 230036)
Email: trusche@mcguirewoods.com
David Szwarcsztejn (SBN 272371)
Email: dszwarcsztejn@mcguirewoods.com
Charles J. Ureña (SBN 348232)
Email: curena@mcguirewoods.com
1800 Century Park East, 8th Floor
Los Angeles, CA 90067-1501
Telephone: 310.315.8200
Facsimile: 310.315.8210

Attorneys for Defendants
EMPLOYBRIDGE, LLC,
EMPLOYBRIDGE MIDWEST 3, INC.,
PRODRIVERS STAFFING, INC., and
PROFESSIONAL DRIVERS OF GEORGIA, INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEONARD JACKSON, on behalf of himself and all other similarly situated persons;<br><br>Plaintiff,<br><br>vs.<br><br>EMPLOYBRIDGE, LLC, EMPLOYBRIDGE MIDWEST 3, INC. PRODRIVERS STAFFING, INC, PROFESSIONAL DRIVERS OF GEORGIA, INC., and DOES I to 20, inclusive;<br><br>Defendants. | CASE NO.<br><br>[Alameda County Superior Court Case No. 24CV104191]<br><br>**DEFENDANTS' NOTICE OF REMOVAL OF CIVIL ACTION FROM STATE COURT** |

PLEASE TAKE NOTICE that Defendants EMPLOYBRIDGE, LLC ("Employbridge"), EMPLOYBRIDGE MIDWEST 3, INC. ("Employbridge Midwest"), PRODRIVERS STAFFING, INC. ("ProDrivers"), and PROFESSIONAL DRIVERS OF GEORGIA, INC. ("ProDrivers Georgia") (collectively, "Defendants"), by and through their undersigned counsel, and without waiver or limitation of their right to compel individual arbitration of the claims asserted in this action, hereby remove the above-captioned action from the Superior Court of the State of California for the County of Alameda to this Court on the ground that this Court has original jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2), and all other applicable bases for removal. In support of this Notice of Removal, and in accordance with 28 U.S.C. § 1446, ProDrivers avers as follows:

**PLEADINGS AND PROCESS**

1. On December 20, 2024, Plaintiff Leonard Jackson ("Plaintiff") filed a Class Action Complaint ("Complaint") in the Alameda County Superior Court styled as *LEONARD JACKSON, on behalf of himself and all other similarly situated persons v. EMPLOYBRIDGE, LLC, EMPLOYBRIDGE MIDWEST 3, INC., PRODRIVERS STAFFING, INC., PROFESSIONAL DRIVERS OF GEORGIA, INC., and DOES 1 to 20, inclusive*, Case No. 24CV1104191 (the "State Court Action"), a true and correct copy of which is attached to this Notice of Removal as **Exhibit ("Ex.") A**. Plaintiff's Complaint purports to assert four causes of action styled as follows: (1) California Labor Code violation; (2) PAGA; (3) Business & Professions Code § 17200; and (4) Class Action Certification. *See generally* Ex. A. Within the First Cause of Action arising under the California Labor Code, Plaintiff alleges, *inter alia*: (a) failure to pay Plaintiff at the prescribed enhanced wage rates for all overtime worked; (b) knowing and intentional failure to accompany each weekly paycheck given Plaintiff with a complete accurate itemized statement of his earnings in violation of Cal. Lab. Code § 226; and (c) willful failure to pay Plaintiff all wages owed to him at the time of his resignation in violation of Cal. Lab. Code § 203. Ex. A, ¶¶ 10.(a)–(c).

2. On March 17, 2025, Employbridge's, ProDrivers's, and Employbridge Midwest's respective registered agents for service of process were personally served with copies of the Summons and Complaint. A true and correct copy of the Summons is attached hereto as **Exhibit**

**B**. True and correct copies of every other process, pleading, and order served on Employbridge, ProDrivers, and Employbridge Midwest in this action to date are attached to this Notice of Removal as the Exhibits identified below:

| Exhibit | Document |
|---------|----------|
| C | Notice of Case Assignment |
| D | Notice of Case Management Conference |
| E | Alameda County ADR Information Packet |

3. On April 14, 2025, Defendants filed an Answer to Plaintiff's Complaint in the State Court Action, a true and correct copy of which is attached hereto as **Exhibit F**.

4. Defendants are informed and believe that the following additional documents are also on file in the State Court Action, which are attached hereto as the Exhibits identified below:

| Exhibit | Document |
|---------|----------|
| G | Civil Case Cover Sheet |

5. Defendants are informed and believe that Defendants Employbridge, Employbridge Midwest, and ProDrivers are the only defendants that have been served with process in the State Court Action. Although defendant ProDrivers Georgia was not served with process in the State Court Action, ProDrivers Georgia, by and through its undersigned counsel, hereby specifically consents to and joins in this removal.[1] Defendants DOES 1 through 100 have yet to be identified and are therefore disregarded for purposes of this removal. 28 U.S.C. § 1441(a).

**TIMELINESS OF REMOVAL**

6. This action has not previously been removed to federal court.

7. This Notice of Removal is timely under CAFA and pursuant to 28 U.S.C. § 1446(b), which provides that such Notices "shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim upon which such action or proceeding is based." Defendants have filed this Notice of Removal within 30 days

---

[1] Plaintiff was employed solely by defendant Employbridge Midwest. By consenting to and joining in this removal, defendants Employbridge, ProDrivers, and ProDrivers Georgia do not concede that they are proper parties to this action, and reserve all rights, claims, remedies and defenses related to their misjoinder as defendants in the Action.

of March 17, 2025, the date on which Plaintiff served Employbridge's, Employbridge Midwest's, and ProDrivers's respective agents for service of process with the Complaint. Thus, this action is being removed within 30 days of the first date upon which Employbridge, Employbridge Midwest, and ProDrivers were served, through service or otherwise, with any paper giving it knowledge that the action was indeed removable.

## REMOVAL JURISDICTION – CAFA JURISDICTION

8.  Defendants aver that this Court has original subject matter jurisdiction over this action pursuant to CAFA, 28 U.S.C. § 1332(d)(2). Under CAFA, this Court has jurisdiction over class actions where any member of the class is a citizen of a state different from any defendant, and where the aggregate amount in controversy exceeds the sum of $5 million, exclusive of interest and costs, and the number of members of all proposed plaintiff classes in the aggregate is at least 100 class members. 28 U.S.C. § 1332(d)(2–6). CAFA authorizes removal of such actions under 28 U.S.C. § 1446.

9.  There is no presumption against removal under CAFA. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014) ("Dart Cherokee") ("[N]o antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court."). To the contrary, "CAFA's 'provisions should be read broadly, with a strong preference that interstate class actions should be heard in federal court if properly removed by any defendant.'" *Id*., quoting S. Rep. No. 109-14, p. 43 (2005).

10. This Court has jurisdiction over this case under CAFA, and this action is one which may be removed to this Court by Defendants, because: (1) the number of members of all proposed plaintiff classes in the aggregate is more than 100 class members; (2) there is minimal diversity of citizenship between Plaintiff and Defendants; and (3) under the applicable preponderance of the evidence standard, the amount in controversy for all class members exceeds $5 million.

11. Removal to this Court is proper because the action was filed and is pending in the Superior Court of the State of California for Alameda County, which is within this judicial district. 28 U.S.C. §§ 84(a), 1446(a).

### *This Is a Class Action*

12.  CAFA defines a "class action" to include civil actions filed under state statutes or rules of procedure similar to Rule 23 of the Federal Rules of Civil Procedure ("Rule 23") that authorize an action to be brought by one or more representative persons as a class action. Plaintiff asks for "certification as a class all persons similarly situated to Plaintiff." *See* Ex. A, Prayer for Relief at ¶ 4. Plaintiff purports to brings this action on behalf of himself and the putative class comprised of individuals who were employed by Defendants as "truck drivers in California" from December 20, 2020. *Id.*, ¶ 23. Therefore, this action is a "class action" under CAFA, and the "Relevant Time Period" as pleaded by Plaintiff in the Complaint and pursuant to applicable is four years prior to the filing of the Complaint (in light of the Plaintiff's claim under Bus. & Prof. Code § 17200), or from December 20, 2020 forward.[2] *Id.* at ¶ 23.

### *Minimal Diversity of Citizenship Exists*

13.  Minimum diversity exists pursuant to 28 U.S.C. § 1332(d)(2)(A).

14.  **Plaintiff's Citizenship.** Plaintiff's Complaint alleges that he "*is* . . . residing in Alameda County[, California]." *See* Ex. A, ¶ 1 (emph. added). Furthermore, ProDrivers is informed and believes that Plaintiff currently resides in and intends to indefinitely remain in California. Accordingly, Plaintiff is a citizen of California for purposes of CAFA. *See* 28 U.S.C. § 1332(a)(1) (an individual is a citizen of the state in which he or she is domiciled); *Mondragon v. Cap. One Auto Fin.*, 736 F.3d 880, 885–886 (9th Cir. 2013) (holding that, in connection with removal to federal court, a person's continuing domicile in a state establishes citizenship "unless rebutted with sufficient evidence of change"); *Lew v. Moss*, 797 F.2d 747, 751–752 (9th Cir. 1986) (holding that California was the state of domicile for a party with a California residential address).

15.  **Defendant Employbridge Midwest's Citizenship.** Plaintiff was employed solely by Employbridge Midwest. Employbridge Midwest is not a citizen of California. Rather, Employbridge Midwest is a Georgia corporation with its corporate headquarters and registered

---

[2] The Complaint does not clearly define the putative class, but seeks relief for "truck drivers in California" who were employed from December 20, 2020. Ex. A, ¶ 23. The Prayer also vaguely seeks certification of "a class of all persons similarly situated to Plaintiff." *Id.* at Prayer, ¶ 4.

principal place of business in Duluth, Georgia. *See* California Secretary of State Business Search at https://bizfileonline.sos.ca.gov/search/business (Entity Name Searched: "Employbridge Midwest 3, Inc."). Employbridge Midwest's C-level officers direct, control and coordinate its activities and executive functions from its corporate headquarters in Georgia. *See* Declaration of Alexis Hemmerling ("Hemmerling Decl.") , ¶ 2. Thus, Employbridge Midwest is not a citizen of California, but rather, was and is a citizen of Georgia. *See* 28 U.S.C. § 1332(c)(1) (for diversity purposes, "[a] corporation shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business"); *see also Hertz Corp. v. Friend,* 559 U.S. 77, 92-93 (2010) (the "'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities," and in practice, the principal place of business "should normally be the place where the corporation maintains its headquarters – provided that the headquarters is the actual center of direction, control, and coordination").

16. **Citizenship of ProDrivers and ProDrivers Georgia.** While minimum diversity is satisfied with Employbridge Midwest alone, ProDrivers and ProDrivers Georgia are also not citizens of California. ProDrivers is a Georgia corporation with its corporate headquarters and registered principal place of business in Duluth, Georgia. *See* California Secretary of State Business Search at https://bizfileonline.sos.ca.gov/search/business (Entity Name Searched: "ProDrivers Staffing, Inc."). ProDrivers' C-level officers direct, control and coordinate its activities and executive functions from its corporate headquarters in Georgia. ProDrivers Georgia is likewise a Georgia corporation with its principal place of business in Duluth, Georgia. *See* Georgia Corporations Division Business Search at https://ecorp.sos.ga.gov/businesssearch (Entity Name Searched: "Professional Drivers of Georgia, Inc."). Accordingly, ProDrivers and ProDrivers Georgia are not citizens of California, but rather, were and are a citizens of Georgia. *See* 28 U.S.C. § 1332(c)(1); *Hertz,* 559 U.S. at 92-93.[3]

---

[3] CAFA requires only *minimal* diversity, such that "*any* member of a class of plaintiffs is a citizen of a State different from *any* defendant." 28 U.S.C. § 1332(d)(2)(A). Under CAFA, Employbridge is a citizen of California and Georgia, as it is an LLC formed in California, with its principal place of business in Georgia. *See* California Secretary of State Business Search at https://bizfileonline.sos.ca.gov/search/business (Entity Name Searched: "Employbridge, LLC"); 28

17. **Doe Defendants.** DOES 1 through 100 are fictitious defendants whose citizenship is disregarded for purposes of removal. *See* 28 U.S.C. § 1441(a).

18. Accordingly, Employbridge Midwest is a citizen of the State of Georgia for the purpose of determining minimum diversity jurisdiction, while Plaintiff is a citizen of the State of California. *See* 28 U.S.C. § 1332(d)(10). Thus, the minimum diversity requirement under CAFA is satisfied. *See* 28 U.S.C. § 1332(d)(2) (providing that CAFA jurisdiction exists over any civil action in which "any member of a class of plaintiffs is a citizen of a State different from any defendant").

### *Size of Proposed Class*

19. According to Plaintiff's Complaint, his proposed class is "so numerous that the interests of judicial economy would be served by consolidating their claims into a single class action." *See* Exh. A, ¶ 30. The Complaint states further that Defendants employed "fifty to one hundred persons" from December 20, 2020 through "mid-February, 2022," which represents just *half* the relevant class period. Indeed, Employbridge Midwest **currently** employs more than 100 individuals as hourly-paid employees in California. *See* Hemmerling Decl., ¶ 6–7. Therefore, the aggregate membership of the proposed class is *at least* 100 as required under CAFA. *See* 28 U.S.C. § 1332(d)(5)(B).

---

U.S.C. § 1332(d)(10); *Hurt v. SH Grp. Hotels and Residence U.S. LLC*, 2024 WL 5244725, at *2 (C.D. Cal. Dec. 30, 2024) ("CAFA instructs courts to determine an LLC's citizenship, as an unincorporated associations, based on its principal place of business and the State of organization"). Regardless, the Action is nevertheless removable because CAFA's minimal diversity requirement is met with Employbridge Midwest (Plaintiff's employer), ProDrivers, and ProDrivers Georgia all being diverse. *See Zakinov v. Ripple Labs, Inc.*, 369 F. Supp. 3d 950, 958 (N.D. Cal. 2019) (Hamilton, J.) (denying motion to remand and finding previously nonremovable action, which named only in-state defendants, met CAFA's minimal diversity requirement after it was consolidated with case that named out-of-state defendants).

### The $5 Million Amount in Controversy Threshold is Satisfied

20. Defendants aver based on the following calculations that the amount in controversy exceeds $5,000,000 only for the purpose of establishing subject matter jurisdiction under CAFA. Defendant's allegations and calculations are not intended to be and should not be construed as admissions of liability or damages with respect to any aspect of this case, or to the proper legal test(s) applicable to Plaintiff's allegations, or to whether a class action is proper.[4]

21. Consistent with Fed. R. Civ. P. 8(a), a removing defendant's notice of removal need only contain plausible allegations to demonstrate the amount in controversy. Evidentiary submissions are **not required** unless and until the removing defendant's allegations are contested by the plaintiff or questioned by the Court:

> In sum, as specified in § 1446(a), a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold. Evidence establishing the amount is required by § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation.

*Dart Cherokee*, 574 U.S. at 89.

22. A plaintiff's complaint is a court's "first source of reference in determining the amount in controversy." *LaCross*, 775 F.3d at 1202 (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)). As such, the ultimate inquiry is what amount is put "in controversy" by Plaintiff's Complaint, not what a court or jury might later determine to be the actual amount of damages, if any.[5]

---

[4] *See LaCross v. Knight Truck and Trailer Sales, LLC*, 775 F.3d 1200, 1203 (9th Cir. 2015) ("'Even when defendants have persuaded a court upon a CAFA removal that the amount in controversy exceeds $5 million, they are still free to challenge the actual amount of damages in subsequent proceedings and trial.'") (quoting *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1198 n.1 (9th Cir. 2015)).

[5] *See Ibarra*, 775 F.3d at 1198 n.1 (defendants "are not stipulating to damages suffered" in a removal petition "but only estimating the damages that are in controversy" because "jurisdiction must be analyzed on the basis of pleadings filed at the time of removal") (citing *Sparta Surgical Corp. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 159 F.3d 1209, 1213 (9th Cir. 1998)); *St. Paul Mercury*, 303 U.S. at 291 ("[T]he status of the case as disclosed by the complaint is controlling in the case of a removal…."); *Scherer v. Equitable Life Assurance Soc'y of the United States,* 347 F.3d 394, 399 (2d Cir. 2003) (the "'amount in controversy'…for jurisdictional purposes, [is] the sum put in controversy by the plaintiff's complaint"); *Wilder v. Bank of Am.*, 2014 WL 6896116, at *4 (C.D. Cal. Dec. 5, 2014) (determining amount in controversy requires that court assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint because the ultimate inquiry is what amount is put "in controversy" by the

23. Furthermore, as confirmed by the Ninth Circuit in *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 414–415, 417–418 (9th Cir. 2018), "the amount in controversy is not limited to damages incurred prior to removal…[r]ather, the amount in controversy is determined by the complaint operative at the time of removal and encompasses all relief a court may grant on that complaint if the plaintiff is victorious." Accordingly, the amount in controversy may include all relief available to Plaintiff through the end of trial.

24. The claims of the individual putative class members in a "class action" are aggregated to determine if the amount in controversy exceeds the sum or value of $5 million. *See* 28 U.S.C. § 1332(d)(6), (11). In addition, Congress intended for federal jurisdiction to be appropriate under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (e.g., damages, injunctive relief, or declaratory relief)." Senate Judiciary Committee Report, S. Rep. 109–114, at 42. Moreover, the Senate Judiciary Committee's Report on the final version of CAFA makes clear that any doubts regarding the maintenance of interstate class actions in state or federal court should be resolved in favor of federal jurisdiction.[6]

25. Here, Plaintiff is a former driver employee of Employbridge Midwest. *See* Ex. A, ¶ 5; Hemmerling Decl., ¶ 5. He seeks, on his own behalf and on behalf of the putative class members he seeks to represent, *inter alia*, unpaid overtime wages, waiting time penalties, wage statement penalties, civil penalties pursuant to the Private Attorneys General Act ("PAGA"), other statutory penalties, interest, attorneys' fees and costs, restitution, and injunctive relief. *See* Ex. A, ¶¶ 10.(a)–(d), 11, 12, 13, 18, 20, 23, Prayer for Relief generally.

26. At this juncture, Employbridge Midwest's payroll, operational, and employment

---

complaint, not what a defendant will actually owe).

[6] *See* S. Rep. 109–114, at 42–43 ("[I]f a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000,' the court should err in favor of exercising jurisdiction over the case…. Overall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions. Its provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.").

data for those putative class members comprised of Employbridge Midwest's non-exempt, hourly-paid drivers employed in California from December 20, 2021 through March 23, 2025 (the "PCMs") was used and analyzed to determine the CAFA amount in controversy in this Notice of Removal. That data can be summarized as follows:

(a) For the period of December 20, 2021 (*i.e.*, three years prior to the filing of the Complaint) to March 23, 2025 (the "3-Year SOL Period"):

    i.    At least 1,138 PCMs separated from their employment with Employbridge Midwest (the "Terminating PCMs");

    ii.    The average final hourly rate of pay for Terminating PCMs was $28.23.

    iii.    The PCMs who worked during the 3-Year SOL Period were full-time employees who regularly worked more than eight (8) hours per workday;

(b) Plaintiff's time records reflect that he regularly worked more than eight (8) hours per workday during his employment with ProDrivers.

*See* Hemmerling Decl., ¶¶ 5–7.

### **_Failure to Pay All Wages Due Upon Termination_**

27. Plaintiff's First Cause of Action for "California Labor Code violations" alleges that Plaintiff was paid the incorrect rate for the overtime he worked while employed with Employbridge Midwest. Ex. A, ¶ 4. Plaintiff asserts that he "typically" worked "twelve hour shifts," thereby incurring "considerable overtime." Ex. A, ¶¶ 3–4. Further, Plaintiff's Complaint asserts that Defendants violated "applicable IWC Orders as well as provisions of the California Labor Code" through their alleged "[w]ilful failure to pay Plaintiff all wages owing to him at the time of his resignation, thereby entitling him to continuing wages for up to thirty days pursuant to Labor Code § 203." Ex. A, ¶ 10.(c). Plaintiff asserts that Defendants employed the PCMs "under circumstances **_substantially similar_**" to Plaintiff, including by "paying said [PCMs] only at their regular wage rate for overtime work, rather than the heightened wage rates required by California Law, including Business & Professions Code § 17200 et. Seq." *Id.*, ¶ 23 (emph. added).

28. As set forth above, there are 1,138 PCMs whose employment terminated during the 3-Year SOL Period ("Terminating PCMs"), and those Terminating PCMs' average final hourly rate

of pay was $28.23 per hour. *See* Hemmerling Decl., ¶¶ 5–7. Given Plaintiff's Complaint's assertions that Plaintiff worked *twelve hours* per day and "considerable overtime" for which he was paid the incorrect rate and that his experience was "substantially similar" to the PCMs, Ex. A, ¶¶ 4, 23, Defendants conservatively and reasonably estimate that Plaintiff and other PCMs worked *at least* an average 8-hour workday during the three-year period preceding the filing of the Complaint, which is consistent with regular workday based on the employment records of Employbridge's other California driver employees. Hemmerling Decl., ¶ 7.b. Based on Plaintiff's allegations pertaining to the "considerable" unpaid overtime, and employment of the PCMs under what Plaintiff describes as "circumstances substantially similar" to him, to conclude that each Terminating PCM suffered received underpaid overtime wages at the time of their separation due to Defendants' purported failure to pay overtime wages at the correct rate. *See, e.g.*, *Calderon v. BKB Constr., LP*, 2017 WL 2618094, *6 (N.D. Cal. June 16, 2017) (Ryu, J.) (accepting 8-hour assumption for waiting time penalties as reasonable where complaint alleged that the plaintiff worked "in excess of 8 hours a day"); *Hess v. Valero Servs., Inc.*, 2023 WL 5401505, *1 (C.D. Cal. Aug. 22, 2023) (same); *Franke v. Anderson Merchandisers LLC*, 2017 WL 3224656, at *4 (C.D. Cal. July 28, 2017) (assuming maximum waiting time penalties were reasonable); *Altamirano v. Shaw Indus.*, 2013 WL 2950600, at *12 (N.D. Cal. June 14, 2013) (Chen, J.) (holding it was reasonable to assume all terminated employees suffered one incident of underpayment and use a 30-day penalty calculation). Additionally, Plaintiff does not allege that he or any of the Terminating PCMs were ever paid complete final wages, thus entitling Defendants to assume the maximum 30 days' penalty for each Terminating PCM. *See Moppin v. Los Robles Reg'l Med. Ctr.*, 2015 WL 5618872, *5 (C.D. Cal. Sept. 24, 2015); *Marentes v. Key Energy Servs. Cal, Inc.*, 2015 WL 756516, *9 (E.D. Cal. Feb. 23, 2015) (where "wages are alleged to have not been paid, the full thirty days may be used for each of the [PCMs]"); *Altamirano*, 2013 WL 2950600, at *12 ("[A]s there is nothing in the complaint [] to suggest that Defendants paid employees these unpaid wages at some point … awarding penalties for the entire 30 day period is reasonable.").

29. Consequently, Defendants *conservatively* calculate that the amount in controversy *only* on Plaintiffs' claim for failure to timely pay final wages within his First Cause of Action is **$7,710,177.60** (1,138 Terminating PCMs × [$28.23 per hour × 8 hours per day × 30 days]).[7]

### *Summary of Amount in Controversy*

30. Accordingly, the amount in controversy is not less than **$7,710,177.60**, ***without considering any sums for the following claims:*** (1) the First Cause of Action, subpart a, for overtime wage violations; (2) the First Cause of Action, subpart b, for inaccurate wage statements; (3) the First Cause of Action, subpart d, for interest, (4) the Second Cause of action for PAGA penalties; (5) the Third Cause of Action for restitution under the Business & Professions Code; and (6) the claims for statutory attorneys' fees and costs.

| **Cause of Action** | **Amount in Controversy** |
|---|---|
| Failure to Timely Pay Final Wages (First Cause of Action) | **$7,710,177.60** |
| **TOTAL AMOUNT IN CONTROVERSY:** | **$7,710,177.60** |

31. Notably, Defendants have satisfied the CAFA $5 million amount in controversy requirement without ascribing *any* value to – among other claims – Plaintiff's statutory claims for unpaid overtime wages, inaccurate wage statements, *or* to Plaintiff's request for statutory attorneys' fees. Even just using the 25 percent attorneys' fees benchmark routinely accepted in the Ninth Circuit on this **one claim** would increase the current amount in controversy calculation by **$1,927,544.40** ($7,710,177.60 × 0.25), bringing the total amount in controversy to over **$9,637,722.00**. *See, e.g., Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) ("This circuit has established 25%...as a benchmark award for attorney fees."); *Glass v. UBS Fin. Servs.*, 331 F. App'x 452, 457 (9th Cir. 2009) (finding 25 percent of total award, rather than 25 percent of

---

[7] If challenged, Defendants expressly reserve and do not waive their right to supplement and/or amend the removal submissions to rely on other higher reasonable assumptions and/or estimates in calculating the amount in controversy.

amount actually collected by the class, "was proper, and in line with Ninth Circuit precedent"); *Fuller v. Bloom Inst. of Tech.*, 2023 WL 7550043, at *7 (N.D. Cal. Nov. 13, 2023) (Tse, M.J.) ("25% of the total recovery remains the 'benchmark award' for attorney's fees, and courts in this district generally apply that benchmark absent special circumstances.") (citations omitted); *Danielsson v. Blood Ctrs. of Pac.*, 2019 WL 7290476, at *8 (N.D. Cal. Dec. 30, 2019) (Spero, J.) ("Courts in this circuit consistently hold that 25% of class recovery is an appropriate estimate for attorney's fees.") (collecting cases).

32.  Defendants expressly reserve and do not waive their right to amend this Notice of Removal and/or offer evidence supporting the Court's jurisdiction over this action under CAFA or otherwise, including, without limitation, as to additional and/or different amounts in controversy and as to traditional diversity and/or federal question jurisdiction. Additionally, Defendants assume the proposed class definition for purposes of this Notice of Removal only, but expressly reserve and do not waive their position that the Complaint contains no proposed class definition and is thus improper and/or cannot be certified, or that the claims of Plaintiff and other putative class members he seeks to represent are subject to individual, binding arbitration.

**RESERVATION OF RIGHTS**

33.  Nothing in this Notice of Removal is intended or should be construed as any type of express or implied admission by Defendants of any fact, of the validity or merits of any of Plaintiff's claims, causes of action, and allegations, or of any liability for the same, all of which are hereby expressly denied, or as any type of express or implied waiver or limitation of Defendants' rights, claims, remedies, and defenses in connection with this action (including, without limitation, its right to compel individual arbitration of the claims asserted in this action or to challenge the misjoining of Employbridge, ProDrivers, and ProDrivers Georgia), all of which are hereby fully and expressly reserved.

**NOTICE TO PLAINTIFF**

34.  Contemporaneously with the filing of this Notice of Removal in the United States District Court for the Northern District of California, written notice of such filing will be served on Plaintiff's counsel of record. In addition, a copy of this Notice of Removal will be filed with the

Clerk of the Court for the Superior Court of the State of California for the County of Alameda.

ACCORDINGLY, Defendants having provided notice as is required by law, the above-titled action should be removed from the Superior Court of the State of California for the County of Alameda to this Court.

DATED: April 15, 2025                    **McGuireWoods LLP**

By:  /s/ Sabrina Beldner
        Sabrina A. Beldner, Esq.
        Timothy M. Rusche, Esq.
        David Szwarcsztejn, Esq.
        Charles J. Ureña, Esq.

Attorneys for Defendants
EMPLOYBRIDGE, LLC,
EMPLOYBRIDGE MIDWEST 3, INC.,
PRODRIVERS STAFFING, INC., and
PROFESSIONAL DRIVERS OF GEORGIA, INC.

# PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my business address is 1800 Century Park East, 8th Floor, Los Angeles, California 90067.

On April 15, 2025, I served the following document(s) described as **DEFENDANTS' NOTICE OF REMOVAL OF CIVIL ACTION FROM STATE COURT** on the interested parties in this action by placing true copies thereof enclosed in sealed envelopes addressed as follows:

Michael E. Adams                                         Attorneys for Leonard Jackson
Law Offices of Michael E. Adams
600 Allerton Street, Suite 200
Redwood City, CA 94063

☒ **BY MAIL:** I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing with the United States Postal Service. Under that practice, it would be deposited with the United States Postal Service that same day in the ordinary course of business. Such envelope(s) were placed for collection and mailing with postage thereon fully prepaid at Los Angeles, CA, on that same day following ordinary business practices. (C.C.P. § 1013 (a) and 1013a(3))

☐ **BY ELECTRONIC DELIVERY:** I caused said document(s) to be transmitted electronically to the above addressees. (C.C.P. § 1010.6)

☐ **BY OVERNIGHT DELIVERY:** I deposited such document(s) in a box or other facility regularly maintained by the overnight service carrier, or delivered such document(s) to a courier or driver authorized by the overnight service carrier to receive documents, in an envelope or package designated by the overnight service carrier with delivery fees paid or provided for, addressed to the person(s) served hereunder. (C.C.P. § 1013(d)(e))

☐ **BY PERSONAL SERVICE:** I caused such envelope(s) to be delivered the addressee(s). (C.C.P. § 1011)

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on April 15, 2025, at Los Angeles, CA.

_____
Matthew Whitney